900 F.2d 164
 52 Fair Empl.Prac.Cas. 1295,
52 Empl. Prac. Dec. P 39,729
UNITED STATES of America, Petitioner-Intervenor,
v.
TODD CORPORATION, Respondent.
Noemi Barragan-Mandujano ROMO, Petitioner-Complainant,
v.
TODD CORPORATION, Respondent.
 Nos. 88-7419, 88-7420.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 11, 1990.
Decided Feb. 26, 1990.
As Amended on Denial of Rehearing May 4, 1990.
 
 Andrew M. Strojny, Dept. of Justice, Washington, D.C., for petitioner-intervenor U.S.
 Jose Roberto Juarez, Jr., Mexican-American Legal Defense and Educ. Fund, Los Angeles, Cal., for petitioner-complainant Noemi Barragan Romo.
 Mary McGrath Tonkin, Peper, Martin, Jensen, Maichel and Hetlage, St. Louis, Mo., for respondent.
 Petition for Review of a Decision of the Executive Office for Immigration Review.
 Before SCHROEDER, FARRIS and NOONAN, Jr., Circuit Judges.
 SCHROEDER, Circuit Judge:
 
 
 1
 We are called upon for the first time to review an administrative decision on a complaint charging discrimination on the basis of citizenship status in violation of 8 U.S.C. Sec. 1324b of the Immigration Reform and Control Act of 1986, Pub.L. No. 99-603, 100 Stat. 3359 (Nov. 6, 1986).
 
 
 2
 Under the provisions of that Act, employers are subject to sanctions for hiring aliens who are not authorized to work in this country. See generally 8 U.S.C. Sec. 1324a. Individuals who are "intending citizens" authorized to work in this country are granted protection against employer discrimination on the basis of their citizenship status. See generally 8 U.S.C. Sec. 1324b. The Act also created a program under which persons who had resided illegally, but continuously, in this country from January 1, 1982 could become lawful residents by timely filing the appropriate application forms. See generally 8 U.S.C. Sec. 1255a.
 
 
 3
 In this case, the petitioner, Noemi Barragan-Mandujano Romo, filed a complaint of discrimination on the basis of her citizenship status. Ms. Romo claimed that her employer, Todd Corporation, violated the anti-discrimination provisions of the Act when it terminated her employment in April of 1987, even though she had resided in this country continuously from January 1, 1982. The Administrative Law Judge (ALJ) dismissed the complaint because at the time of her termination, neither the sanctions provision nor the legalization program had gone into effect. Because the legalization program was not yet operative the petitioner had not filed any application for legalization. The ALJ held that she had not yet qualified for protection as an "intending citizen" as defined in section 1324b(a)(3)(B).
 
 
 4
 The Special Counsel for Immigration-Related Unfair Employment Practices of the Department of Justice intervened in the administrative proceeding on behalf of Ms. Romo; both the United States and Ms. Romo filed petitions for our review. We have jurisdiction pursuant to 8 U.S.C. Sec. 1324b(i)(1).
 
 
 5
 Our review requires a thorough understanding of the relevant provisions of the Immigration Reform and Control Act of 1986, codified in scattered sections of 8 U.S.C. and commonly known as IRCA. We refer to it as "The Act."
 
 
 6
 The Act imposes sanctions on employers who knowingly hire, recruit, refer for a fee, or continue to employ unauthorized workers without verifying their eligibility to work in the United States. See 8 U.S.C. Sec. 1324a(a)(1) and (2). These provisions are intended to discourage the employment of unauthorized aliens. Congress was concerned, however, that the sanctions provisions of the Act might result in employers refusing to hire, or otherwise discriminating against individuals on the basis of their national origin or citizenship status. Congress was particularly concerned about documented aliens and "foreign looking and sounding" United States citizens. See H.R.Conf.Rep. No. 1000, 99th Cong., 2d Sess. 87-88, reprinted in 1986 U.S.Code Cong. & Admin.News 5649, 5840, 5842.
 
 
 7
 At the same time, Congress wanted to protect persons who had already resided in this country for a number of years, albeit unlawfully, and hence had become part of their communities with strong family ties. See H.R.Rep. No. 682, 99th Cong., 2d Sess., pt. I at 49, reprinted in 1986 U.S.Code Cong. & Admin.News 5649, 5653. Congress therefore incorporated in the Act a program under which aliens who had resided unlawfully in the United States continuously since January 1, 1982, could apply for "temporary resident status." See 8 U.S.C. Sec. 1255a(a)(2)(A). To qualify under that program, the alien must make a timely application, demonstrate continuous unlawful residence since 1982, and continuous physical presence in the United States since November 6, 1986, the date of the Act's enactment. See 8 U.S.C. Sec. 1255a(a)(1), (2) and (3). The application period began May 5, 1987 and was to continue for a twelve-month period. See 8 U.S.C. Sec. 1255a(a)(1)(A); 8 C.F.R. Sec. 245a.2(a).
 
 
 8
 The petitioner in this case, Ms. Romo, a native and citizen of Mexico, entered the United States illegally in 1976. In September of 1986, Todd Corporation hired her as a full-time employee. In April of 1987, the month before the sanctions provision of the Act went into effect and unlawful aliens could begin applying for "temporary resident status," Todd's general manager began requesting proof of legal authority to work in the United States from all of Todd's employees. This activity was apparently prompted by the manager's unfounded belief that Todd was already subject to sanctions under the Act for the employment of unauthorized workers.
 
 
 9
 At this time Ms. Romo was unable to establish that she was either a citizen or an alien authorized to work in this country because the program under which unlawful aliens could begin applying for "temporary resident status" would not go into effect until May of 1987. Todd terminated Ms. Romo's employment when she could not produce the documentation requested by the general manager. It is beyond dispute that Todd would not have been subject to any liability under the Act for continuing her employment, since the sanctions provision had also not yet gone into effect. Further, the Act contained a grandfather clause prohibiting sanctions against employers who retained as employees unauthorized aliens hired before November 6, 1986. See Immigration Reform and Control Act of 1986, Pub.L. No. 99-603, Title I, Pt. A, Sec. 101(a)(3)(B), 100 Stat. 3372 (1986). Ms. Romo was such an alien.
 
 
 10
 Ms. Romo then filed a complaint with the Executive Office for Immigration Review pursuant to 8 U.S.C. Sec. 1324b(d)(2) alleging that she had been discriminated against on the basis of citizenship status in violation of 8 U.S.C. Sec. 1324b(a)(1)(B). That section prohibits discrimination on the basis of an individual's citizenship status if the individual is "a citizen or intending citizen."[1] The term "intending citizen" is in turn defined in paragraph (3) of the same statute.[2] The portion of the definitional provision of "intending citizen" relevant for our purposes defines an "intending citizen" as one who is "lawfully admitted for temporary residence under 8 U.S.C. Sec. 1255a(a)(1)."
 
 
 11
 The dispositive issue in this appeal, as it was in the administrative proceeding, is whether Ms. Romo qualified as an "intending citizen" at the time of her termination. Ms. Romo's position is that she did qualify and was therefore discriminated against on the basis of her status as an intending citizen. She argues that she could have complied with the necessary requirements to become an intending citizen at the time of the alleged discrimination, had the application process been available. The ALJ ruled, however, that Ms. Romo was not an "intending citizen" because she had not yet filed a timely application for temporary resident status at the time of the alleged discrimination. This she could not have done until May, 1987 and did not actually do until July, 1987. The ALJ reasoned that Ms. Romo therefore could not have been discriminated against on the basis of her status as an "intending citizen" because she did not yet have such status. Upon our review of the statutory scheme, we conclude that the Administrative Law Judge reached the correct conclusion.
 
 
 12
 In its definition of "intending citizen," section 1324b(a)(3)(B) makes very clear that to qualify as an intending citizen, an individual like Ms. Romo (who is not a permanent resident, a refugee under 8 U.S.C. Sec. 1157, or a grantee of asylum under 8 U.S.C. Sec. 1158) must be "granted the status of an alien lawfully admitted for temporary residence under section 1255a(a)(1)." At the time of the alleged discrimination in this case, Ms. Romo had not been granted this status. She therefore could not have been discriminated against on the basis of her status as an intending citizen. Moreover, the definition's incorporation of section 1255a(a)(1) is significant. That section requires a "timely application" for temporary resident status,[3] indicating that an alien cannot gain the status of a temporary resident until the application is filed.[4]
 
 
 13
 Although the petitioner, and the United States as intervenor, urge that the statutory provisions are ambiguous, there is nothing in the statute that suggests that an individual can be considered an "intending citizen" before filing an application for temporary resident status. If there is any ambiguity in the statute, it is whether an individual must wait until the application is approved and the alien attains the status of temporary resident, before becoming an "intending citizen." See 8 U.S.C. Secs. 1255a(a)(1), 1324b(a)(3)(B)(i). Any such ambiguity has been authoritatively resolved by regulations promulgated under the Act. The regulations provide that "temporary resident status" relates back to the date of application for successful legalization applicants. See 8 C.F.R. Sec. 245a.2(s). In addition, on March 30, 1988, the Attorney General made clear that aliens who apply for temporary resident status are protected from citizenship status discrimination from the time the application fee is paid so long as the legalization application is subsequently approved. See 53 Fed.Reg. 10338 (codified at 28 C.F.R. Sec. 44.101(c)(2)(ii) (1988)). These regulations butress our conclusion that an alien is not an "intending citizen" until the application is filed.
 
 
 14
 The legislative history confirms our reading of the statutory scheme. Congress was concerned about preventing discrimination which might accompany the sanctions provisions. See, e.g., H.R.Rep. No. 682, 99th Cong., 2d Sess., pt. II at 12, reprinted in 1986 U.S.Code Cong. & Admin.News 5757, 5761-62 ("if there is to be sanctions enforcement and liability there must be an equally strong and readily available remedy if resulting employment discrimination occurs"). But the history does not reflect an intent to provide citizenship status discrimination remedies before the sanctions provisions went into effect or to provide such remedies to those whose authorization to work had not been recognized by the United States in any way. The Report of the House Committee on the Judiciary, for example, focuses on elimination of work barriers for those who have already been lawfully admitted or otherwise authorized to work in this country.
 
 
 15
 The Committee does not believe barriers should be placed in the path of permanent residents and other aliens who are authorized to work and who are seeking employment, particularly when such aliens have evidenced an intent to become U.S. citizens. It makes no sense to admit immigrants and refugees to this country, require them to work and then allow employers to refuse to hire them because of their immigration (non-citizenship) status. Since Title VII does not provide any protection against employment discrimination based on alienage or non-citizen status, the Committee is of the view that the instant legislation must do so.
 
 
 16
 H.R.Rep. No. 682, 99th Cong., 2d Sess., pt. I at 70, reprinted in 1986 U.S.Code Cong. & Admin. News 5649, 5674.
 
 
 17
 The reasoning of the only other reported decision of any relevance to this case, LULAC v. Pasadena I.S.D., does not materially assist petitioners here. 662 F.Supp. 443, as modified in subsequent opinion declining to grant permanent injunction, 672 F.Supp. 280 (S.D.Tex.1987). The district court in LULAC preliminarily enjoined an employer from terminating alien employees who had supplied false social security numbers on their employment applications and who would suffer irreparable harm in their ability to find future employment if they were terminated before they could file applications for temporary resident status. 662 F.Supp. at 446-52. The court observed that there would have been no need for the false social security numbers if the plaintiffs had been United States citizens. Id. at 448. The district court in LULAC did not discuss whether the plaintiffs were citizens or "intending citizens" as defined in section 1324b(a)(3)(B) of the Act. That is the issue in this case.
 
 
 18
 Our holding in this case is limited to the availability of remedies for discrimination on the basis of citizenship status provided under the Immigration Reform and Control Act of 1986. All parties agree that the petitioner has properly pursued other remedies for discrimination on the basis of national origin under Title VII of the Civil Rights Act, 42 U.S.C. Secs. 2000e-2 et seq.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 8 U.S.C. Sec. 1324b(a) provides:
 (a) Prohibition of discrimination based on national origin or citizenship status.
 (1) General rule. It is an unfair immigration-related employment practice for a person or other entity to discriminate against any individual (other than an unauthorized alien) with respect to the hiring, or recruitment or referral for a fee, of the individual for employment or the discharging of the individual from employment
 (A) because of such individual's national origin, or
 (B) in the case of a citizen or intending citizen (as defined in paragraph (3)), because of such individual's citizenship status.
 
 
 [2]
 8 U.S.C. Sec. 1324b(a)(3) provides:
 (3) Definition of citizen or intending citizen. As used in paragraph (1), the term "citizen or intending citizen" means an individual who--
 (A) is a citizen or national of the United States, or
 (B) is an alien who--
 (i) is lawfully admitted for permanent residence, is granted the status of an alien lawfully admitted for temporary residence under section 1255a(a)(1) of this title, is admitted as a refugee under section 1157 of this title, or is granted asylum under section 1158 of this title, and
 (ii) evidences an intention to become a citizen of the United States through completing a declaration of intention to become a citizen; ...
 
 
 [3]
 8 U.S.C. Sec. 1255a(a)(1) provides:
 Adjustment of status of certain entrants before Jan. 1, 1982, to that of person admitted for lawful residence
 (a) Temporary resident status. The Attorney General shall adjust the status of an alien to that of an alien lawfully admitted for temporary residence if the alien meets the following requirements:
 (1) Timely application. (A) During application period.... the alien must apply for such adjustment during the 12-month period beginning on a date (not later than 180 days after Nov. 6, 1986) designated by the Attorney General.
 
 
 [4]
 The declaration of intent to become a citizen need only be completed and filed before the alien files a charge of discrimination with the Office of Special Counsel for Immigration-Related Unfair Employment Practices. See 28 C.F.R. Sec. 44.101(c)(2)(ii)