84 P.3d 1231 (2004)
Lorena B. ANICA, Appellant,
v.
WAL-MART STORES, INC., a Delaware Corporation; Greg Sullivan, and Jane Doe Sullivan, Individually and the marital community thereof, Respondents.
No. 51359-1-I.
Court of Appeals of Washington, Division 1.
January 5, 2004.
Publication Ordered February 24, 2004.
As Amended on Denial of Reconsideration February 24, 2004.
*1234 Jose Edward Gaitan, Virginia Leeper, Gaitan Group PLLC, Seattle, for Respondents.
Eric C. De Los Santos, Seattle, Georgia Trejo Locher, Georgia Trejo Locher PS, Burien, for Appellant. *1232
*1233 BAKER, J.
Despite an excellent work record, Lorena Anica was fired by Wal-Mart a few days after her return to work from time off to recover from her second on-the-job injury. Anica sued alleging wrongful termination. Wal-Mart explained that Anica was fired because she repeatedly failed to provide a valid Social Security number. The superior court granted summary judgment in favor of Wal-Mart and denied Anica's motion for reconsideration. Anica appeals the summary judgment dismissing her claims based on theories of disability discrimination, retaliation, deliberate injury, violation of public policy, *1235 and negligent infliction of emotional distress. Because Anica's claims fail, we affirm.

I
Lorena Anica began working in a Wal-Mart store as an overnight stocker in October 1998. Her duties included unloading merchandise from trucks, using pallet jacks, and stocking merchandise on shelves. Anica received a commendation for her dedication, teamwork, and work ethic, and received a pay raise based on her "outstanding rating." On May 6, 1999, Anica sustained a workplace injury to her lower back and left arm while lifting objects off a truck. She sought medical treatment and was given written work restrictions by her doctor. Anica presented the work restrictions to her managers.
Wal-Mart assigned Anica to the same position she had occupied before her injury, but instructed her to restrict her activities to tasks within her capabilities while her symptoms continued. One of the managers specifically instructed Anica not to work on the truck. Anica continued to receive restrictions from her doctor for several months. When she provided the list of restrictions to her employer, she was instructed not to exceed those restrictions, regardless of the usual expectations of her position. Although Anica could not lift "heavy things," she never made specific complaints about tasks she could not carry out because of her injury.
On March 29, 2000, Anica took a position as Layaway/Cashier. The physical demands of that position include bending, twisting, squatting, standing and lifting and/or moving objects between 25 to 50 pounds. Anica understood that she should seek the assistance of associates, stockmen, and managers to help her with lifting or other duties.
On May 26, 2000, Anica sustained another on-the-job injury while lifting some bikes. As a result of this second injury, Anica underwent surgery and took several weeks off work for recovery. She filed a workers' compensation claim within a few days of the injury. Anica was released to return to work on August 10, 2000, with restrictions against lifting, bending, and climbing. Wal-Mart gave her the position of greeter, which did not require Anica to lift, push, or shove.
Six days later, store manager Greg Sullivan fired Anica. Wal-Mart listed "could not produce Social Security card" as the reason for termination on Anica's exit interview form. At the time of her discharge, Wal-Mart management and Anica had known about her Social Security number problem for approximately five months.
In late March 2000, the store received the first notice from Wal-Mart corporate offices that there was a problem with the Social Security number Anica had submitted on her employment forms. After receiving the notice, Sullivan confronted Anica about the problem and Anica assured him she could resolve the matter. In early April, Anica brought to the Wal-Mart managers a fee agreement from an attorney who was hired to help her resolve her Social Security number problem. The Wal-Mart managers received two more notices about Anica's problem in early May and mid-June 2000, which they shared with Anica. The problem remained unresolved and in August 2000, Sullivan received instructions from Wal-Mart corporate offices to fire Anica.
During her deposition, Anica explained that she was born in Mexico and did not come to the United States until 1985. She is not a citizen of the United States.

II
When reviewing an order granting summary judgment, this court engages in the same inquiry as the trial court.[1] A summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] A material fact is one upon which the outcome of the litigation depends, *1236 in whole or in part.[3] The court must consider the facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party.[4] But the nonmoving party must set forth specific facts to defeat a motion for summary judgment, rather than rely on bare allegations.[5] In discrimination cases, the plaintiff must establish specific and material facts to support each element of his or her prima facie case.[6]
This court will not reverse a trial court's decision on a motion for reconsideration absent a showing of manifest abuse.[7]
Anica's disparate treatment discrimination claim is based on chapter 49.60 RCW, also known as the Washington law against discrimination (WLAD). In applying the WLAD, the Washington courts have adopted the three-part burden shifting scheme from McDonnell Douglas Corp. v. Green.[8] Under the McDonnell Douglas scheme, the plaintiff first must establish a prima facie case, then the burden of production shifts to the defendants to produce a nondiscriminatory reason for the employment decision.[9] The plaintiff then may attempt to prove that the nondiscriminatory reason offered by the defendant is actually pretext.[10]
To present a prima facie case for a disparate treatment case of disability discrimination, a plaintiff must establish that she was 1) disabled; 2) subject to an adverse employment action; 3) doing satisfactory work; and 4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination.[11] There is no dispute that Anica has established the first three elements.
To establish the fourth element, Anica argues that the timing of the termination, specifically its proximity to her return to work as a greeter, provides enough evidence. Anica's timing argument relies on a logical fallacy-post hoc, ergo propter hoc or "after this, therefore because of this." But coincidence is not proof of causation. Furthermore, the timing of the discharge does not create as clear a picture as Anica portrays. Following Anica's first injury, Wal-Mart did not fire her. Two months before Anica's second injury, her managers received the first notice of her problems with the Social Security Administration and asked her to resolve those problems. When she was injured a second time, again Wal-Mart did not fire her. Wal-Mart managers continued to receive notices of her Social Security problems during the time she had surgery and was on a leave of absence, but they did not fire her at that time. Upon her return to work, Anica still had not resolved her Social Security problems and then was fired.
Anica does not provide sufficient evidence to establish that her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. Therefore, she does not establish a prima facie case for disparate treatment disability discrimination.
Anica also claims Wal-Mart failed to accommodate her disability. To establish a prima facie case for disability discrimination under a failure to reasonably accommodate *1237 theory, an employee must prove that 1) she had a sensory, mental, or physical abnormality that substantially limited her ability to perform her job; 2) she was qualified to perform the essential functions of the job in question; 3) she gave the employer notice of the abnormality and its accompanying substantial limitations; and 4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality.[12]
The duty of an employer to accommodate reasonably an employee's disability does not arise until the employer is aware of the employee's disability and physical limitations.[13] "The employee bears the burden of giving the employer notice of [her] disability."[14] In Hume v. American Disposal Company,[15] the court held that because the employee had not missed any work due to pain in his hands and because he was successfully completing his work in a timely fashion, the employer was less likely to have notice.[16]
According to Anica, Wal-Mart kept her working in a position with duties that forced her to violate her work restrictions, even though she gave sufficient notice of those restrictions. But Anica herself admitted that when she returned to work, Wal-Mart managers instructed her to not exceed her limitations. Wal-Mart did not have a further responsibility to accommodate Anica until she gave sufficient notice of her need for further accommodation. Anica did not miss work because of her restrictions and she completed her work in a timely fashion. Even assuming that Anica was forced to continue lifting objects in violation of her restrictions, Wal-Mart did not fail to reasonably accommodate, because as with the employee in Hume, Anica did not give sufficient notice to Wal-Mart.
Because Anica does not successfully present a successful claim for discrimination against Wal-Mart, her supervisor, Greg Sullivan, also is not liable under the WLAD.
Next, Anica claims Wal-Mart fired her in retaliation for claiming workers compensation. Under RCW 51.48.025(3), an employee may institute an action against an employer who has discharged the employee in retaliation for pursuing workers' compensation benefits[17] by showing that 1) she exercised the statutory right to pursue workers' benefits under Title 51 RCW or communicated to the employer an intent to do so or exercised any other right under RCW Title 51; 2) she was discharged; and 3) there is a causal connection between the exercise of the legal right and the discharge.[18]
In establishing a prima facie case, the employee need not attempt to prove that the employer's sole motivation was retaliation based on the employee's pursuit of benefits under the Industrial Insurance Act.[19] The employee need only produce evidence that pursuit of a workers' compensation claim was a cause of the firing.[20]
Ordinarily, an employee is forced to establish the prima facie case "`by circumstantial evidence, since the employer is not apt to announce retaliation as his motive.'"[21] *1238 Proximity in time between the protected activity and the employment action when coupled with evidence of satisfactory work performance supports an assertion of retaliatory motive.[22] In recognition of the difficulty of proving motive, our courts allow an employee to establish the causation element of the prima facie case by merely showing that she filed a workers' compensation claim, that the employer had knowledge of the claim, and that the employee was discharged.[23]
Anica has thus established a prima facie case for retaliatory discharge. She exercised her right to pursue workers' compensation benefits. Wal-Mart discharged her approximately three months later, even though she had received high marks on her evaluations. And Wal-Mart was aware that Anica had pursued her workers' compensation benefits.
The burden of production shifts to the employer after the employee successfully establishes a prima facie case.[24] To satisfy the burden of production, the employer must articulate a legitimate reason for the discharge that is neither pretext nor retaliatory.[25] Wal-Mart explains that Anica was fired because she continued to have problems with her Social Security number.
The burden shifts back to the employee when the employer produces evidence of a legitimate basis for the discharge.[26] The employee may respond to the employer's legitimate reason by showing that the reason is pretext or by showing that although the employer's stated reason is legitimate, the employee's pursuit of workers' compensation benefits was a substantial factor motivating the employer to fire the employee.[27]
Anica argues that Wal-Mart's given reason is both illegitimate and pretext. First, she argues that Wal-Mart's decision to fire her based solely on a Social Security Administration no-match letter is an illegal act and therefore should not constitute a legitimate, non-discriminatory reason. Second, she argues that the close proximity in time between her termination and her request for accommodation in itself casts doubt on the truthfulness of Wal-Mart's given reason for firing her.
Anica's first argument fails because Wal-Mart acted appropriately in the circumstance of an employee with false documentation. Employers are subject to sanctions for knowingly hiring or continuing to employ aliens who are not authorized to work in the United States.[28] The statute authorizing these sanctions also created an employment-eligibility verification system.[29] Under the system, an employer is required to execute a verification form ("I-9") attesting, under penalty of perjury, that the employer has examined the employee's required documents and thereby verified that the employee is not an unauthorized alien.[30] An employer that fails to comply with the employment-eligibility verification requirements may be sanctioned.[31]
When Wal-Mart received the Social Security Administration no-match letter, it approached *1239 Anica and asked her to resolve her difficulties. In response, Anica brought in a fee agreement from an attorney who was to help her resolve her difficulties with the Social Security Administration. But five months later, Anica still had not brought in documentation showing that her problems with Social Security had been resolved or that she had a valid Social Security number. Given Anica's lack of ability to resolve her problems with the Social Security Administration, Wal-Mart justifiably believed it would have been exposed to sanctions for knowingly employing an unauthorized alien if it had not fired her.
Anica's second argument, that the timing of her discharge betrays Wal-Mart's true motive, is no more successful. She argues the evidence demonstrates Wal-Mart valued her more as a physical laborer. She further argues Wal-Mart therefore had a strong incentive to get rid of her once she could no longer perform physical labor. But the evidence does not support Anica's argument that Wal-Mart only valued her as a physical laborer. Although Wal-Mart did value her as a physical laborer, her evaluations also praised her non-physical qualities such as her ability to foster teamwork, a strong work ethic, good customer service skills, and self-direction.
Because Wal-Mart's given reason is legitimate and not pretext, Anica must show that retaliation was a substantial factor in her discharge. But the circumstances do not support her argument. Anica was terminated approximately three months after her filing for workers' compensation benefits and approximately one week after she already had returned to work. During her leave of absence, she received substantial workers' compensation benefits for surgery and recovery and Wal-Mart took no retaliatory action. Furthermore, she was not fired after her first injury. Anica presents no evidence that retaliation was a substantial factor in her discharge.
Next, Anica claims that despite the Washington Industrial Insurance Act (IIA), Wal-Mart does not enjoy immunity from her lawsuit. The IIA represents a great compromise; injured workers have access to no-fault compensation for injuries on the job while employers receive immunity from civil suits by workers.[32] But employers who deliberately injure their employees do not enjoy the immunity.[33]
To prove that an employer had deliberate intention, the worker must prove that the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge.[34] Mere negligence, gross negligence, failure to follow safety procedures, and even an act that has a substantial certainty of producing injury does not rise to the level of deliberate intention.[35]
Anica has not shown that Wal-Mart had actual knowledge that an injury was certain to occur. Wal-Mart managers directed her to not exceed her doctor-prescribed work limitations. She was told not to work in the truck, because that would have exceeded the limitations. Wal-Mart managers told her that other workers were available to assist with duties she could not perform. There is no showing that Wal-Mart managers knew that a work injury was certain to occur.
Next, Anica claims that Wal-Mart wrongfully discharged her in violation of public policy. Generally, an employment relationship in Washington is terminable at will.[36] But an employee has a cause of action in tort for wrongful discharge if the discharge of the employee violates a clear mandate of public policy.[37] To establish a claim for wrongful discharge in violation of public *1240 policy, a plaintiff must prove (1) the existence of a clear public policy (the clarity element); (2) that discouraging the conduct in which the plaintiff engaged would jeopardize the public policy (the jeopardy element); (3) that the public-policy-linked conduct cause the dismissal (the causation element); and (4) the defendant must not be able to offer an overriding justification for the dismissal (the absence of justification element).[38]
The wrongful discharge exception is a narrow one and should be applied cautiously to avoid allowing the exception to swallow the general rule that employment is terminable at will.[39] "The question of what constitutes a clear mandate of public policy is one of law"[40] and the burden is on the employee to prove that the dismissal violates a clear mandate of public policy.[41]
Courts must find and not create public policy.[42] Washington statutes and case law are the primary sources for Washington public policy.[43] But our courts have found other sources of public policy to suffice, such as a municipal fire code[44] or federal law.[45]
Anica argues she is protected under a public policy based on federal law against citizen status discrimination or document abuse. Specifically, Anica points to 8 U.S.C.A. section 1324b(a)(1)(B) (discrimination) and section 1324b(a)(6) (document abuse). Both of these sections are part of the Immigration Reform and Control Act (IRCA). Under provisions of the IRCA, employers are subject to sanctions for knowingly hiring or continuing to employ aliens who are not authorized to work in the United States.[46] But Congress was concerned that the sanctions under IRCA might result in employers discriminating against individuals on the basis of national origin or citizenship status.[47] Congress therefore incorporated in IRCA protections for "protected individuals."[48]
Anica would derive no benefit even if we were to recognize a clearly mandated public policy based on IRCA. She is not a citizen or national of the United States. She is not an alien lawfully admitted for permanent residence. She is also not a special agricultural worker or an entrant before January 1, 1982 granted temporary residence. Nor was she admitted as a refugee or granted asylum. Because she does not qualify as a protected individual, she would not be protected by a public policy based on IRCA.
Finally, Anica claims Wal-Mart negligently inflicted emotional distress upon *1241 her. A negligent infliction of emotional distress claim can exist under Washington law when the claim is not covered under the IIA's exclusivity provisions and the dominant feature of the negligence claim was the emotional injury.[49] Anica argues that Wal-Mart willfully disregarded her work restrictions and by doing so, caused emotional distress as well as physical injury to her. As we stated earlier, this argument is not supported by the record. Wal-Mart managers restricted her from working in the truck, instructed her not to exceed her restrictions, and instructed her to use the assistance of other employees for tasks that violated her restrictions.
Because Anica does not prevail, we do not award attorney fees or costs.
AFFIRMED.
KENNEDY and BECKER, JJ., concur.
NOTES
[1] Degel v. Majestic Mobile Manor, Inc., 129 Wash.2d 43, 48, 914 P.2d 728 (1996); Kahn v. Salerno, 90 Wash.App. 110, 117, 951 P.2d 321 (1998).
[2] CR 56(c); Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982).
[3] Morris v. McNicol, 83 Wash.2d 491, 494, 519 P.2d 7 (1974).
[4] Clements v. Travelers Indem. Co., 121 Wash.2d 243, 249, 850 P.2d 1298 (1993).
[5] Young v. Key Pharm., Inc., 112 Wash.2d 216, 225-226, 770 P.2d 182 (1989).
[6] Marquis v. City of Spokane, 130 Wash.2d 97, 105, 922 P.2d 43 (1996).
[7] Perry v. Hamilton, 51 Wash.App. 936, 938, 756 P.2d 150 (1988).
[8] 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
[9] Allison v. Hous. Auth. of City of Seattle, 118 Wash.2d 79, 88-89, 821 P.2d 34 (1991).
[10] Allison, 118 Wash.2d at 89, 821 P.2d 34.
[11] Ennis v. Nat'l Ass'n of Bus. and Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir.1995) (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).
[12] Hill v. BCTI Income Fund-I, 144 Wash.2d 172, 192-93, 23 P.3d 440 (2001).
[13] Goodman v. Boeing Co., 127 Wash.2d 401, 408, 899 P.2d 1265 (1995).
[14] Goodman, 127 Wash.2d at 408, 899 P.2d 1265 (citing Hume v. American Disposal Co., 124 Wash.2d 656, 672, 880 P.2d 988 (1994).)
[15] 124 Wash.2d 656, 880 P.2d 988 (1994).
[16] Hume, 124 Wash.2d at 672, 880 P.2d 988.
[17] Wilmot v. Kaiser Aluminum & Chem. Corp., 118 Wash.2d 46, 54, 821 P.2d 18 (1991).
[18] Wilmot, 118 Wash.2d at 68-69, 821 P.2d 18.
[19] Wilmot, 118 Wash.2d at 70, 821 P.2d 18.
[20] Wilmot, 118 Wash.2d at 70, 821 P.2d 18.
[21] Wilmot, 118 Wash.2d at 69, 821 P.2d 18 (quoting 1 Lex Larson, Unjust Dismissal § 6.05[5], at 6-51 (1988)).
[22] Wilmot, 118 Wash.2d at 69, 821 P.2d 18; Francom v. Costco Wholesale Corp., 98 Wash. App. 845, 862, 991 P.2d 1182 (2000).
[23] Wilmot 118 Wash.2d at 69, 821 P.2d 18.
[24] Wilmot, 118 Wash.2d at 70, 821 P.2d 18.
[25] Wilmot, 118 Wash.2d at 70, 821 P.2d 18.
[26] Wilmot, 118 Wash.2d at 70, 821 P.2d 18.
[27] Wilmot, 118 Wash.2d at 73, 821 P.2d 18.
[28] U.S. v. Todd Corp., 900 F.2d 164, 165 (9th Cir.1990); see 8 U.S.C.A. § 1324a(a)(1) and (2).
[29] Villegas-Valenzuela v. I.N.S., 103 F.3d 805, 807 (9th Cir.1996).
[30] Villegas-Valenzuela, 103 F.3d at 807; see also 8 U.S.C.A. § 1324a(b)(2).
[31] Villegas-Valenzuela, 103 F.3d at 807; see also 8 U.S.C.A. § 1324a(e)(4).
[32] Birklid v. Boeing Co., 127 Wash.2d 853, 859, 904 P.2d 278 (1995).
[33] RCW 51.24.020; Birklid, 127 Wash.2d at 859, 904 P.2d 278.
[34] Birklid, 127 Wash.2d at 865, 904 P.2d 278.
[35] Folsom v. Burger King, 135 Wash.2d 658, 664-65, 958 P.2d 301 (1998).
[36] Selix v. Boeing Co., 82 Wash.App. 736, 740, 919 P.2d 620 (1996) (citing Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 223, 685 P.2d 1081 (1984)).
[37] Selix, 82 Wash.App. at 740, 919 P.2d 620 (citing Thompson, 102 Wash.2d at 232, 685 P.2d 1081).
[38] Gardner v. Loomis Armored, Inc., 128 Wash.2d 931, 941, 913 P.2d 377 (1996).
[39] Sedlacek v. Hillis, 145 Wash.2d 379, 390, 36 P.3d 1014 (2001).
[40] Dicomes v. State, 113 Wash.2d 612, 617, 782 P.2d 1002 (1989).
[41] Selix, 82 Wash.App. at 741, 919 P.2d 620 (citing Thompson, 102 Wash.2d at 232, 685 P.2d 1081).
[42] Selix, 82 Wash.App. at 741, 919 P.2d 620.
[43] Sedlacek, 145 Wash.2d at 388, 36 P.3d 1014.
[44] Sedlacek, 145 Wash.2d at 388, 36 P.3d 1014 (citing Ellis v. City of Seattle, 142 Wash.2d 450, 466-67, 13 P.3d 1065 (2000)).
[45] Sedlacek, 145 Wash.2d at 388, 36 P.3d 1014 (citing Thompson, 102 Wash.2d at 234, 685 P.2d 1081).
[46] Todd Corp., 900 F.2d at 165; see also 8 U.S.C.A. § 1324a(a)(1) and (2).
[47] Todd Corp., 900 F.2d at 165; see H.R. Conf. Rep. No. 682, 99th Cong., 2d Sess., 87-88, reprinted in 1986 U.S.C.C.A.N. 5842-43.
[48] See 8 U.S.C.A. § 1324b(a)(1)(B); (A "protected individual" is defined as (A) is a citizen or national of the United States, or (B) is an alien who is lawfully admitted for permanent residence, is granted the status of an alien lawfully admitted for temporary residence under section 1160(a) or 1255a(a)(1) of this title, is admitted as a refugee under section 1157 of this title, or is granted asylum under section 1158 of this title; but does not include (i) an alien who fails to apply for naturalization within six months of the date the alien first becomes eligible (by virtue of period of lawful permanent residence) to apply for naturalization or, if later, within six months after November 6, 1986, and (ii) an alien who has applied on a timely basis, but has not been naturalized as a citizen within 2 years after the date of the application, unless the alien can establish that the alien is actively pursuing naturalization, except that time consumed in the Service's processing the application shall not be counted toward the 2-year period.) U.S.C.A. § 1324b(a)(3). See also Todd Corp., 900 F.2d at 165 (analysis before the section was amended).
[49] See Chea v. The Men's Wearhouse, Inc., 85 Wash.App. 405, 411-12, 932 P.2d 1261, 971 P.2d 520 (1997).