[No. 57962-8. En Banc. December 12, 1991.]

IRENE P. ALLISON, *Petitioner*, v. THE HOUSING AUTHORITY OF THE CITY OF SEATTLE, *Respondent*.

*Marilyn J. Endriss, Kenneth Shear,* and *Endriss & Shear, P.S.,* for petitioner.

*Williams, Kastner & Gibbs,* by *Rebekah R. Ross* and *Daniel W. Ferm,* for respondent.

*Robert H. Whaley* and *Bryan P. Harnetiaux* on behalf of Washington State Trial Lawyers Association, amicus curiae.

UTTER, J. — Irene Allison sued the Housing Authority of the City of Seattle (hereinafter Housing Authority), claiming, among other things, that the Housing Authority had retaliated against her for filing an age discrimination complaint when she was released in a reduction in force. In a special verdict form, a jury found that the Housing Authority had discriminated and/or retaliated against Allison when she was laid off. The Housing Authority appealed to the Court of Appeals, claiming that the jury instruction on proximate causation for a retaliation claim was erroneous. That jury instruction required Ms. Allison to show that her discharge was motivated "to any degree by retaliation." On appeal, the Washington State Court of Appeals Division One reversed and remanded the case, holding that the jury instruction should have required Allison to show that, but for filing a discrimination complaint, she would not have been discharged. The primary issue in this appeal is what the standard of causation should be in a claim alleging retaliation for filing an age discrimination claim. We decline to adopt either the "but for" standard advanced by the Court of Appeals or the "to any degree" standard used by the trial court. Instead, we adopt an intermediate standard for causation, a "substantial factor" approach, and remand this case to the trial court.

I

On January 3, 1983, the Seattle Housing Authority hired Irene Allison as a rehabilitation specialist in its Home Improvement Program. At that time, Allison was 61 years old. When Allison was hired, the senior rehabilitation specialist and Allison's immediate supervisor was John Cosfol. Daphne Ghan was the Home Improvement Program Manager.

When Ghan evaluated Allison's performance in 1983, Allison's overall rating was superior, and her evaluation included a recommendation for a merit increase. But then, in 1984, the trouble allegedly began. In February 1984 when Cosfol left the Housing Authority, Allison applied for Cosfol's position as senior rehabilitation specialist. While her application for that job was pending, Ghan allegedly asked Allison her age. Allison testified that Ghan seemed surprised that Allison was 62 years old. The Housing Authority selected Bolduc, another rehabilitation specialist, to be the new senior rehabilitation specialist. Subsequently, relations between Allison and Ghan deteriorated. Ghan allegedly made comments about "little old ladies" in staff meetings. Allison's performance ratings for 1984 and 1985 slipped. She did not receive merit increases those years. Allison testified that she asked Bolduc and Ghan for additional work to increase her productivity, but additional work was not assigned.

On October 2, 1985, Allison filed an age discrimination claim with the United States Equal Employment Opportunity Commission (hereinafter EEOC). About 1 month later, a clipping appeared on the exterior wall of Allison's cubicle, directly across from Ghan's office. The clipping was entitled " 'Aging' Checklist" and contained derogatory jokes about older people.

After receiving her right to sue notice from the EEOC on February 13, 1986, Allison filed suit against the Housing Authority, alleging that the Housing Authority had discriminated against her because of her age when it passed her over for promotion and failed to give her merit increases in 1984 and 1985. On May 2, 1986, Ghan met with Allison. She accused Allison of making inappropriate statements about Bolduc, Allison's immediate supervisor, to a client of the Housing Authority. Allison claims she denied making such statements. On May 12, 1986, Allison received a written reprimand from Ghan. After responding in writing to the reprimand, Allison filed an additional charge with the

EEOC on June 3, 1986, alleging that the reprimand was retaliatory.

On July 30, 1986, Ghan once again conducted Allison's performance evaluation. The overall rating Allison received for that evaluation was slightly lower than the 1985 evaluation. Once again, Allison did not receive a merit increase. Plaintiff's Exhibit, at 21.

In 1986, funding for the Home Improvement Program was cut, necessitating a reduction in force of its employees. In August 1986, Donald Johnson replaced Daphne Ghan as the Home Improvement Program Manager and assumed responsibility for determining who would be laid off. On September 19, 1986, Johnson held a meeting with the property rehabilitation staff. He informed the staff that he planned to base his layoff decision on their performance evaluations and productivity statistics. Allison tried to tell Johnson about her lawsuit, but Johnson declined to talk to her about it, claiming he did not want to "cloud the issue."

On October 3, 1986, Johnson notified Allison she would be laid off. Allison requested a written analysis of how Johnson arrived at the decision. Johnson replied that he used a comparative analysis of past annual performance evaluations and annual production statistics in determining which of the three rehabilitation specialists would be laid off. Of the three property rehabilitation specialists at that time, one was retained, another was transferred to another department. Allison alone was laid off. After filing a third complaint with the EEOC, Allison amended her complaint on December 3, 1986, adding a claim that her termination was based on age discrimination and retaliation.

The case was tried before a jury in King County Superior Court. Allison alleged at trial that:

1. The Housing Authority had discriminated against her when it did not select her for promotion to Senior Rehabilitation Specialist in 1984;

2. The Housing Authority discriminated against her when it did not give her merit increases in 1984-86; and

3. The Housing Authority had discriminated and/or retaliated against her when it discharged her in 1986.

The trial court instructed the jury on Allison's burden to show proximate cause for her retaliation claim:

> In order for you to find for the plaintiff, you must find from a preponderance of all the evidence that the defendant's employment actions adverse to the plaintiff were motivated *to any degree* by retaliation.

(Italics ours.) Instruction 10.

The trial court provided a special verdict form to the jury. On that form, the jury decided for Allison on her third claim, finding that the Housing Authority had discriminated and/or retaliated against Allison when it selected her for layoff in 1986. It awarded her $50,000 in damages for lost salary and benefits. The Housing Authority moved the trial court for a judgment n.o.v. or, in the alternative, a new trial. The trial court denied the Housing Authority's motion and awarded Allison attorney's fees and costs.

The Housing Authority appealed the trial court's decision to the Court of Appeals, Division One, alleging that the trial court erred in giving instruction 10 and challenging the sufficiency of the evidence for the jury's verdict. The Court of Appeals agreed with the Housing Authority that the language "to any degree" in instruction 10 misstated an employee's burden of proving proximate cause in a retaliatory discharge claim under RCW 49.60.210. *Allison v. Housing Auth.*, 59 Wn. App. 624, 799 P.2d 1195 (1990). Instead, the Court of Appeals held that Allison must prove that, but for her filing an age discrimination claim, the Housing Authority would not have discharged her. *Allison*, 59 Wn. App. at 628. But the Court of Appeals disagreed with the Housing Authority when it found that there was sufficient evidence to support an inference that discrimination and/or retaliation caused Allison's discharge. Therefore, the Court of Appeals reversed and remanded the issue of whether discrimination and/or retaliation caused Allison's discharge to the trial court. *Allison*, at 629. Allison sought review by this court.

## II

The main issue on this appeal is what is the appropriate standard of causation when an employee brings a claim of retaliatory discharge under RCW 49.60.210. The Court of Appeals listed several reasons for requiring a plaintiff to show "but for" causation for a retaliatory discharge. First it quoted, with approval, a long section of the United States Supreme Court's opinion in *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285-86, 50 L. Ed. 2d 471, 97 S. Ct. 568 (1977). Second, it stressed the desirability of conformity between the standards of causation for retaliatory discharge and for discrimination claims. Third, it stated that a "but for" standard would be consistent with the statutory language of RCW 49.60.210. Finally, it suggested that the "to any degree" standard is overly broad and confusing.

The parties' arguments as to whether this court should affirm or reverse the Court of Appeals' decision to adopt a "but for" standard of causation fall into three broad categories:

1. Arguments based on the language of RCW 49.60;

2. Arguments that federal and Washington state case law support one standard or the other; and

3. Arguments that public policy considerations favor one standard of causation over the other. In light of our recent decision in *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 821 P.2d 18 (1991), we adopt an intermediate, "substantial factor" standard.

### A

 Both parties argue that the statutory language of RCW 49.60 supports the standards they propose. On balance, the language of RCW 49.60 supports a more liberal standard of causation than the "but for" standard adopted by the Court of Appeals. Washington's Law Against Discrimination contains a sweeping policy statement strongly condemning many forms of discrimination. RCW 49.60.010. It also requires that "this chapter shall be construed liber-

ally for the accomplishment of the purposes thereof." RCW 49.60.020. This language suggests that a rigorous "but for" causation requirement is too harsh a burden to place upon a plaintiff in a retaliation case. This is particularly true, because enforcement of this State's antidiscrimination laws depends in large measure on employees' willingness to come forth and file charges or testify in discrimination cases. Plaintiffs bringing discrimination cases assume the "role of 'a private attorney general,' vindicating a policy 'of the highest priority' ". *Fahn v. Cowlitz Cy.*, 95 Wn.2d 679, 684, 628 P.2d 813 (1981) (quoting *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 63, 64 L. Ed. 2d 723, 100 S. Ct. 2024 (1980) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416-17, 54 L. Ed. 2d 648, 98 S. Ct. 694 (1978))). We have written that in resolving a question of statutory construction, we will adopt the interpretation which "best advances the legislative purpose". *In re R.*, 97 Wn.2d 182, 187, 641 P.2d 704 (1982). Adopting a "but for" standard of causation would unduly hamper efforts to enforce the Law Against Discrimination and would run contrary to the Legislature's intent to prevent discrimination.

Seattle Housing Authority reiterates the reasoning of the Court of Appeals in *Allison* when it asserts that the "but for" standard of causation is consistent with the language of Washington's antiretaliation statute, RCW 49.60.210. That statute prohibits employers from making an adverse employment decision " '*because* [the employee] opposed any practices forbidden by [RCW 49.60]' ". *Allison*, 59 Wn. App. at 628. However, as Justice Brennan noted in his plurality opinion in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 104 L. Ed. 2d 268, 109 S. Ct. 1775 (1989) the word "because" used in a similar context in Title VII of the Civil Rights Act of 1964 does not require "but for" causation. Justice Brennan commented that:

> We need not leave our common sense at the doorstep when we interpret a statute. It is difficult for us to imagine that, in the simple words "because of," Congress meant to obligate a plaintiff to identify the precise causal role played by legitimate and illegitimate motivations in the employment decision she

challenges. We conclude, instead, that Congress meant to obligate her to prove that the employer relied upon sex-based considerations in coming to its decision.

490 U.S. at 241-42. Similarly, the presence of the word "because" in our statute does not compel us to impose an unrealistic burden on an employee to show precisely which factors — legitimate or illegitimate ones — actually motivated an employer.

Next, the Seattle Housing Authority argues for the "but for" standard by noting that the word "because" must mean the same thing in both RCW 49.60.180 and RCW 49.60.210. RCW 49.60.180 makes it an unfair practice to refuse to hire, discharge, or take other adverse actions against individuals *because of* age, sex, or other similar impermissible reasons. Two Court of Appeals decisions have interpreted RCW 49.60.180 as requiring the plaintiff to prove "but for" causation.[1] Therefore, the Housing Authority urges this court to adopt the "but for" standard of causation for claims of retaliation under RCW 49.60.210. The Fourth Circuit in *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985) added some support to this argument. In *Ross*, the Fourth Circuit said that for purposes of Title VII, there were no reasons for imposing a higher standard of causation in retaliation cases than in discrimination cases. 759 F.2d at

---

[1]The Court of Appeals in *Allison* cited *Hatfield v. Columbia Fed. Sav. Bank*, 57 Wn. App. 876, 882, 790 P.2d 1258 (1990) and *Stork v. International Bazaar, Inc.*, 54 Wn. App. 274, 285, 774 P.2d 22 (1989) for the proposition that plaintiffs in employment discrimination cases have the burden of proving "but for" causation in an employment discrimination case. The *Hatfield* case, however, does not speak of "but for" causation, but suggests that plaintiff's burden is to show that the plaintiff's age "made a difference" or motivated the decision. *Hatfield*, 57 Wn. App. at 882. The Court of Appeals decision in *Stork* did, however, require that the plaintiff prove that age was the "determining factor" or that she would not have been discharged "but for" her age. *Stork*, 54 Wn. App. at 285 (quoting *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1019 (1st Cir. 1979); *Laugesen v. Anaconda Co.*, 510 F.2d 307, 317 (6th Cir. 1975)). More recently, the Court of Appeals in *Pannell v. Food Servs. of Am.*, 61 Wn. App. 418, 810 P.2d 952 (1991) approved a jury instruction that required the plaintiff to show that age was a determining factor. Therefore, Division One of the Court of Appeals has adopted a "determining factor" or "but for" approach to causation in at least two cases.

*366, quoted in Allison v. Housing Auth.,* 59 Wn. App. 624, 628 n.2, 799 P.2d 1195 (1990).

Nevertheless, we disagree with the Housing Authority's argument. First, this court has never expressly held that plaintiff has a "but for" burden of causation in an RCW 49.60.180 case. Therefore, the conformity that the Court of Appeals seeks may be illusory. Second, *Ross* is not dispositive, because Title VII differs from RCW 49.60 in that Title VII does not contain a provision which requires liberal construction for the accomplishment of its purposes. Furthermore, we believe that the "but for" standard of causation adopted by the court in *Allison* will negatively affect enforcement of the Law Against Discrimination.

Therefore, on balance, we believe the language of RCW 49.60 supports at least a more liberal standard of causation than the Court of Appeals' "but for" standard.

## B

■ Next, the parties argue that federal and state case law support the standards of causation they propose. Washington's Law Against Discrimination does not provide any criteria for establishing a discrimination case. *Grimwood v. University of Puget Sound, Inc.,* 110 Wn.2d 355, 361, 753 P.2d 517 (1988). For this reason, we have looked to federal cases construing statutes such as the Age Discrimination in Employment Act of 1967 for guidance. *Roberts v. ARCO,* 88 Wn.2d 887, 892, 568 P.2d 764 (1977).

Federal courts employ the United States Supreme Court's approach in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05, 36 L. Ed. 2d 668, 93 S. Ct. 1817, 1824-25 (1973), in age discrimination cases[2] and in retaliatory discharge cases. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985). Under the *McDonnell* approach, the plaintiff must establish a prima facie case, and then the burden of production shifts to the defendant to

---

[2]*See* Annot., *Proving That Discharge Was Because of Age, for Purposes of Age Discrimination in Employment Act (29 USCS §§ 621 et seq.),* 58 A.L.R. Fed. 94, 101-03 (1982).

state a legitimate reason for the employment decision.[3] The plaintiff then can attempt to prove that the employer's offered reason is a pretext. We have adopted the *McDonnell* approach in allocating the burden of proof in several age discrimination cases. *Grimwood v. University of Puget Sound, Inc.*, 110 Wn.2d 355, 362, 753 P.2d 517 (1988); *Brady v. Daily World*, 105 Wn.2d 770, 776, 718 P.2d 785 (1986); *Roberts v. ARCO*, 88 Wn.2d 887, 892, 568 P.2d 764

---

[3] As a preliminary matter, the Court of Appeals decision does not clearly distinguish between what plaintiff must show as part of his or her prima facie case and what the plaintiff must prove as part of his or her ultimate burden of proof. It seems to say that the plaintiff must prove "but for" causation as part of its prima facie case. While several courts have noted that demonstrating a causal connection is part of plaintiff's prima facie case (*see, e.g., Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985); *Whatley v. Metropolitan Atlanta Rapid Transit Auth.*, 632 F.2d 1325, 1328 (5th Cir. 1980); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir. 1980); *see also* 3 A. & L. Larson, *Employment Discrimination* § 87.31, at 17-114 (1990)), none seem to have placed such a heavy burden on a plaintiff in establishing his or her prima facie case.

Putting such a heavy burden on the plaintiff in the first stage of the 3-part *McDonnell* test is not right. It makes the later two stages of that 3-part test hollow and meaningless. Even the Fourth Circuit in *Ross*, which the Court of Appeals relied upon heavily, notes that the "burden of establishing a prima facie retaliation case 'is not onerous.'" *Ross*, 759 F.2d at 365 (quoting *Texas Dep't of Comm'ty Affairs v. Burdine*, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089, 1094 (1981)). The court in *Ross* only applied "but for" causation at the third stage of the *McDonnell* analysis, where the plaintiff must show that the employer's proffered reasons are pretextual. *Ross*, 759 F.2d at 365-66. Therefore, we clarify that showing "but for" causation is not part of a plaintiff's prima facie case of retaliatory discharge. As the balance of this opinion indicates, we also reject "but for" causation as part of the plaintiff's ultimate burden of persuasion.

In our decision in *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d at 68-69, we addressed the causal requirement an employee must meet as part of his or her prima facie case for a retaliation claim. In *Wilmot*, employees claimed they had been discharged for claiming workers' compensation benefits. This court in *Wilmot* required only that the plaintiff show "that the worker filed a workers' compensation claim, that the employer had knowledge of the claim, and that the employee was discharged." *Wilmot*, at 69. Other courts have adopted similar approaches to the causal requirement of an employee's prima facie case in cases involving retaliation for filing a discrimination claim. *See, e.g., Hochstadt v. Worcester Found. for Experimental Biology*, 425 F. Supp. 318 (D. Mass.), *aff'd*, 545 F.2d 222 (1st Cir. 1976); *see also* 3 A. & L. Larson § 87.31, at 17-115 *et seq*. We find our formulation in *Wilmot* of what constitutes a causal connection for a prima facie case equally applicable in this case.

(1977). This court has also made it clear that the burden of persuasion remains at all times upon the plaintiff/employee. *Grimwood*, 110 Wn.2d at 363. Nevertheless, this court has stated that federal cases provide only guidance, and that even the *McDonnell* test should not be rigidly applied. *Grimwood*, 110 Wn.2d at 362.

Federal cases reach very different results on the applicable standard of causation for an employee's ultimate burden of proof in a retaliation case. The Court of Appeals quoted one commentator who noted that,

> A number of other courts have agreed with the district court in *Hochstadt* [*v. Worcester Found. for Experimental Biology*, 425 F. Supp. 318 (D. Mass.), *aff'd*, 545 F.2d 222 (1st Cir. 1976)] that the employer's retaliatory animus need only contribute to its motivation for taking adverse action against an employee, and many more have pronounced the same burden in slightly different terms. But there is by no means unanimity on this point. The burden ranges from that most easily proved in *Hochstadt* to the "principal, but not sole reason" burden of *Tidwell* [*v. American Oil Co.*, 332 F. Supp. 424 (D. Utah 1971)] to a "but for" burden, where the plaintiff must prove that the adverse action would not have occurred had there been no protected activity.

(Footnotes omitted.) *Employment Discrimination* § 87.32, at 17-124 to 17-126 (1990). The Housing Authority cites two cases which adopted the "but for" standard of causation, *Ross v. Communications Satellite Corp.*, 759 F.2d 355 (4th Cir. 1985); *Kauffman v. Sidereal Corp.*, 695 F.2d 343, 345 (9th Cir. 1982). The quotation from Larson, however, indicates that this approach is not universal.

In choosing between these various approaches, the Washington Court of Appeals quoted the United States Supreme Court's opinion in *Mt. Healthy*, which it deemed persuasive. The *Mt. Healthy* decision, however, does not lend much support to the Court of Appeals' decision. In *Mt. Healthy*, a schoolteacher sued a school district claiming that its refusal to rehire him violated his rights under the First and Fourteenth Amendments. The Court allocated the burden of proof on causation by placing the initial burden on the plaintiff to show that his constitutionally protected

activity was a substantial or motivating factor behind the decision not to rehire him. Then the defendant school board could still prevail by showing "by a preponderance of the evidence that it would have reached the same decision as to [the teacher's] reemployment even in the absence of the protected conduct." *Mt. Healthy*, 429 U.S. at 287. Thus, even though *Mt. Healthy* does employ an approach similar to that of "but for" causation, there is an important difference. In that case, the burden of persuasion shifted to the defendant to show that it would have taken the same action. The Court of Appeals' decision in *Allison* does not give the plaintiff the benefit of a shifting burden of persuasion.

Moreover, the Court's recent discussion of causation requirements for mixed-motive, Title VII cases in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 104 L. Ed. 2d 268, 109 S. Ct. 1775 (1989) runs contrary to the standard of causation adopted by the Court of Appeals in *Allison*. In *Price Waterhouse*, the Court considered the necessary standard of causation in a sexual discrimination action brought under Title VII. A plurality of four justices explicitly rejected the argument that plaintiff had the burden of proving "but for" causation. 490 U.S. at 237-41. The Court described plaintiff's burden as showing that "an impermissible motive played a motivating part in an adverse employment decision" and then the burden was placed upon the defendant to show that it would have made the same decision in the absence of the unlawful motive. 490 U.S. at 250.

For these reasons, we find that federal law does not give such clear support for the adoption of a "but for" standard of causation. Because federal case law is not unequivocal, and is only persuasive authority, we adopt a standard that best corresponds with the language and policies contained in this State's antidiscrimination law.

Allison supports her argument that this court should adopt the "to any degree" standard with several Washington Court of Appeals cases. Alternatively, Allison cites two

Washington Supreme Court cases to support adoption of a shifting burden of proof for retaliatory discharge claims.

Prior to the Court of Appeals decision in *Allison*, a series of Court of Appeals cases suggested that the plaintiff in a retaliatory discharge case under RCW 49.60.210 need only prove that retaliation motivated the adverse employment decision "to any degree". The trial court in *Allison* adopted this standard, relying on *Kinney v. Bauch*, 23 Wn. App. 88, 596 P.2d 1074, *review denied*, 92 Wn.2d 1032 (1979). Two subsequent Division One cases followed the "to any degree" standard suggested by *Kinney. Selberg v. United Pac. Ins. Co.*, 45 Wn. App. 469, 471-72, 726 P.2d 468, *review denied*, 107 Wn.2d 1017 (1986); *Hollingsworth v. Washington Mut. Sav. Bank*, 37 Wn. App. 386, 391-92, 681 P.2d 845, *review denied*, 103 Wn.2d 1007 (1984). Allison argues that the Court of Appeals' decision in *Allison* marked a departure from those cases and a lack of deference to the principle of stare decisis. As the Housing Authority notes, however, none of those Court of Appeals decisions directly addressed the issue of whether the "to any degree" language should be used in jury instructions. Moreover, this court has never approved the "to any degree" standard.

Petitioner Allison also insists that the adoption of the "but for" standard conflicts with two decisions of this court that adopted a burden-shifting approach: *Davis v. Department of Labor & Indus.*, 94 Wn.2d 119, 614 P.2d 1279 (1980) and *Jordan v. Oakville*, 106 Wn.2d 122, 132, 720 P.2d 824 (1986). In *Davis*, the employer did not contest the trial court's finding that it had failed to fairly consider the employee's application for promotion. Therefore, the court concluded that discrimination was an established fact. 94 Wn.2d at 122. The only issue on appeal was whether Davis was entitled to damages, and the court placed the burden on the defendant to show by clear and convincing evidence that it would not have promoted Davis even in the absence of discrimination. 94 Wn.2d at 127. *Davis*, therefore, is easily distinguishable from the *Allison* case. In the instant case there is no comparable evidence that would make discrimi-

nation or retaliation an established fact and justify shifting the burden to the employer.

In *Jordan*, the other case cited by petitioner, the plaintiff claimed that he was discharged for his constitutionally protected First Amendment activity. The court held that plaintiff had the burden of proving his protected conduct was a substantial factor in the decision to terminate him. 106 Wn.2d at 132. If that was shown, then the burden would shift to the City to show that the same decision would have been made even in the absence of the protected conduct. *Jordan*. *Jordan*, like *Mt. Healthy*, involved a claim of retaliation for exercising First Amendment rights. Therefore, it is distinguishable from the instant case. Moreover, the burden-shifting approach used in *Davis* and *Jordan* is inconsistent with several Washington cases which state that the burden of persuasion remains at all times on the plaintiff in a discrimination or retaliation claim. *Grimwood*, 110 Wn.2d at 363 (burden of persuasion on plaintiff in discrimination case at all times), *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d at 72 (burden of persuasion on plaintiff in claim that employer terminated employee in retaliation for claiming workers' compensation benefits). Therefore, we decline to adopt the burden-shifting approach in this case.

## C

Finally, the parties advance policy arguments for adopting the standards they propose. Allison argues that imposing a "but for" standard of causation would place an unrealistic burden on plaintiffs. Admittedly, proving cause in fact is usually part of a plaintiff's burden of showing causation. The most widely used and accepted standard for determining cause in fact is the "but for" test. Belton, *Causation in Employment Discrimination Law*, 34 Wayne L. Rev. 1235, 1247 (1988). As Belton notes, however:

> In the majority of cases the "but for" test is sufficient to determine the causal issue. In the multiple causation cases — those in which the conduct of more than one defendant or set of circumstances play a part in bringing about a plaintiff's injury — the application of the "but for" test is deemed unfair,

> as a matter of policy and social justice, in reaching a just result. The "substantial factor" test is generally applied in the multiple causation cases. This test states that a defendant is liable for a plaintiff's injury if the defendant's conduct was a substantial factor in bringing about the injury even though other causes may have contributed to it. The "substantial factor" test is based more on policy considerations than on the purely factual inquiry of "what happened or would have happened", used in the "but for" test.

(Footnotes omitted.) Belton, at 1248; *see also* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 41, at 265-66 (5th ed. 1984) (discussing the application of the "substantial factor" test as a substitute for "but for" causation where multiple events have caused a tort). This reasoning for ameliorating the harshness of a "but for" standard of causation applies equally to situations involving discriminatory or retaliatory discharge, because both legitimate and illegitimate motives often lurk behind those decisions.

As noted above, a "but for" standard of causation will also have a detrimental effect on enforcement of the antidiscrimination laws. People will be less likely to oppose discrimination by bringing claims or testifying if this court does not provide them some measure of protection against retaliation. Thus, a "but for" standard of causation would not further the Legislature's purpose in enacting Washington's Law Against Discrimination.

On the other hand, the Housing Authority persuasively argues that the "to any degree" standard used by the trial court is not a sound alternative. It persuasively notes that such a standard suggests that even slight retaliatory animus could be a basis for employer liability:

> A jury could sensibly suppose that anyone would harbor at least *some* slight retaliatory animus against a person who has filed a complaint . . .. In effect, the "to any degree" language virtually eliminates both the motivation and causation elements from the plaintiff's claim . . ..

Seattle Housing Authority's answer to the petition for review, at 9 n.2.

Seattle Housing Authority also argues that employees will abuse the protection that a lower standard of causation will give them. It insists that some employees may file discrimination claims to shield themselves from discharge. But that argument ignores the fact that if the court makes the burden of causation too high, this may encourage employers to fabricate pretexts to discharge employees who have brought discrimination claims or testified against their employers.

Given these competing policy considerations, the most sensible approach is to adopt an intermediate standard. The two approaches advocated by the parties in this case are by no means exclusive. Indeed, one court counted four possible standards of proof for a retaliation claim.[4]

## D

■ Rejecting both the "to any degree" and the "but for" standards of causation, this court instead requires plaintiff to prove that retaliation was a substantial factor behind the decision.

Recently, in *Wilmot v. Kaiser Aluminum & Chem. Corp.*, *supra*, we had occasion to address the plaintiff's burden of proving causation in an analogous context. The *Wilmot* case involved a series of questions certified to this court from federal court. In that case, several plaintiffs claimed they were wrongfully discharged in retaliation for filing workers' compensation claims. This court in *Wilmot* required an employee to show by a preponderance of the evidence that retaliation for filing a workers' compensation claim was a substantial factor motivating the discharge. *Wilmot*, at 71. It explicitly rejected the more onerous "determining factor" or "but for" standard of causation.

---

[4]*Sutton v. National Distillers Prods. Co.*, 445 F. Supp. 1319, 1328 (S.D. Ohio 1978), *aff'd*, 628 F.2d 936 (6th Cir. 1980). Those four standards were: whether the filing of a charge (1) played any part in the challenged action, no matter how remote or tangential, (2) played a substantial factor in the challenged action, (3) was the principal, though not the sole reason, for the employer's action, (4) or whether or not the adverse employment action would have taken place had there been no protected activity. *Sutton*, at 1328.

This court noted several reasons for preferring the "substantial factor" approach in *Wilmot*, and those reasons are similarly persuasive in this case. First, in *Wilmot* this court noted the public policy expressed in RCW 51.48.025, prohibiting retaliatory discharge for filing a compensation claim. A close comparison of the language of RCW 51.48.025 and RCW 49.60.210, which prohibits an employer from retaliating against an employee for opposing discrimination, shows that the latter condemns retaliation even more forcefully.[5] Second, this court noted in *Wilmot* that employees are at a distinct disadvantage in a retaliation case because they must prove causation without the benefit of the employer's own knowledge of the reason for the discharge. An employee does not have the access to proof that an employer usually has. This holds true for both cases involving retaliation for filing a workers' compensation claim and those involving retaliation for filing a discrimination claim.

Therefore, we decline to adopt either of the tests advanced by the parties. Instead, this court holds that a plaintiff bringing suit under RCW 49.60.210 must prove causation by showing that retaliation was a substantial factor motivating the adverse employment decision.

### III

The Housing Authority argues that whatever standard this court adopts, there is insufficient evidence to support an inference that discrimination and/or retaliation caused Allison's discharge. The Housing Authority's claim that there was insufficient evidence has already been rejected twice. First, the trial court refused to grant the Housing

---

[5]RCW 51.48.025 acknowledges that an employer is free to take action against an employee for other legitimate reasons besides retaliation for filing a workers' compensation claim. Thus, that statute explicitly acknowledges an employer's prerogative to discharge an employee for a legitimate reason. RCW 49.60.210, which prohibits retaliation for opposing discriminatory practices, contains no similar language recognizing an employer's right to discharge an employee for other reasons besides retaliation for opposing discrimination. Moreover, RCW 49.60.020 requires that the Law Against Discrimination be liberally construed to accomplish its purposes.

Authority's request for a judgment n.o.v. Second, the Court of Appeals decided that there was sufficient evidence to support an inference that discriminatory or retaliatory motives proximately caused Allison's discharge.

Allison's theory at trial was that her supervisor, Daphne Ghan, "set up" Allison to be selected for layoff through, for example, giving her poor performance evaluations and giving her an allegedly undeserved reprimand. In an unpublished portion of its opinion, the Court of Appeals properly looked at the evidence in the light most favorable to Allison, and listed several facts which supported an inference of discrimination and/or retaliation. On the issue of discrimination, that evidence included the fact that Ghan made remarks about "little old ladies", and that she allegedly became hostile toward Allison after learning Allison's true age. Also, there was evidence that after Ghan learned Allison was in her sixties, her ratings of Allison changed from good and superior with recommendations of advancement to satisfactory. Moreover, there was evidence that Ghan refused Allison's requests for additional work. On the issue of retaliation, Ghan gave Allison an allegedly unwarranted reprimand. And, after Allison's suit was filed in 1986, she received her lowest performance evaluation.[6] It was, however, only slightly less favorable than her 1985 evaluation. The " 'Aging' Checklist" pinned on Allison's cubicle after she filed her discrimination suit lends some support to

---

[6] The Housing Authority draws this court's attention to the fact that Don Johnson, Daphne Ghan's replacement as Home Improvement Program Manager, made his decisions based solely on performance evaluations and production statistics. The Housing Authority claims that even if Allison had received the highest possible scores on her 1986 performance evaluations, she would not have cumulative scores as high as those of the one rehabilitation specialist that was retained. Therefore, the Housing Authority insists that retaliation could not possibly have made any difference in the decision to lay off Irene Allison. The Housing Authority is correct in noting that with a perfect score on her 1986 evaluation, Irene Allison's cumulative average on her performance evaluation still would not have equaled that of the only employee retained as a rehabilitation specialist. Nevertheless, her average may have equaled or surpassed that of the rehabilitation specialist who was transferred to another department of the Housing Authority rather than being terminated.

the conclusion that her reprimand and her 1986 evaluation were tainted by a retaliatory motive. Based on the evidence listed above, the Court of Appeals was correct in its conclusion that there was thin, but sufficient, testimony for this case to go to the jury.

Finally, in her supplemental brief, Allison requested attorney's fees and costs pursuant to RCW 49.60.030(2) and RAP 18.1. To be precise, RAP 18.1 provides for reasonable attorney's fees or expenses. Where applicable law grants the party the right to recover reasonable attorney fees or expenses on review, a party must make its request in compliance with RAP 18.1(a). RCW 49.60.030(2) has been interpreted as granting parties a right to attorney fees on appeal. *Fahn v. Cowlitz Cy.*, 95 Wn.2d 679, 685, 628 P.2d 813 (1981); *Pannell v. Food Servs. of Am.*, 61 Wn. App. 418, 449-50, 810 P.2d 952 (1991).

■ Allison has complied with the procedural requirements of RAP 18.1, which requires only that the party make a request in its brief for fees or expenses. RAP 18.1(b). Nevertheless, Allison has not prevailed in this appeal. Even though we are not adopting the Court of Appeals' "but for" approach to causation, we are not adopting Allison's approach either. We, therefore, deny Allison's request for attorney's fees and expenses under RAP 18.1.

Therefore, we remand this case to the trial court for retrial on the issue of whether age discrimination and/or retaliation caused Allison's discharge. The new jury shall redetermine both liability and damages. On the issue of retaliation, the court should instruct the jury that Allison must show that retaliation was a substantial factor behind the Housing Authority's decision to lay her off.

BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.

Reconsideration denied February 11, 1992.